**JOYCELYN MERCER, Plaintiff**

v.

**GOVERNMENT OF THE VIRGIN ISLANDS, Defendant**

Civil No. 523-1980

Territorial Court of the Virgin Islands

Div. of St. Thomas and St. John

May 12, 1982

BERNARD VAN SLUYTMAN, ESQ. (BIRCH, DEJONGH & FARRELLY), St. Thomas, V.I., *for plaintiff*

EDWARD A. WASCOE, ESQ., Assistant Attorney General (Department of Law), St. Thomas, V.I., *for defendant*

HODGE, *Presiding Judge*

## OPINION

## I. INTRODUCTION

Once again this court is called upon to resolve a question of jurisdictional limitation under the Virgin Islands Tort Claims Act, 33 V.I.C. § 3408 et seq. (1981 Supp.) (Act). The defendant has moved to dismiss the complaint on the ground that plaintiff has failed to comply with the procedural requirements of the Act, thereby denying subject matter jurisdiction to the court. The plaintiff opposes this motion, contending that she was unaware of the technical requirements of the Act, that she notified the defendant of the incident two months after it occurred, that she wanted to avoid litigation, that four or five months after the incident she retained counsel, and that the government was not prejudiced by her failure to comply with the filing requirements.

The defendant's motion to dismiss was made at trial and was taken under advisement to enable both sides to thoroughly brief the two basic issues raised. These issues are (1) whether plaintiff has complied with the procedural requirements of the Act and, if not, (2) whether plaintiff satisfies those provisions of the Act that would enable the court to permit the filing of a late claim. This opinion addresses those issues. For the reasons which follow, the defendant's motion to dismiss must be granted.

Since the Act has been in effect for approximately ten years, neither its novelty nor its complexity can now be accepted as an excusable basis for noncompliance, especially where, as here, counsel was retained within six months of the incident. Nevertheless, the continual raising of these issues as well as the adverse consequences

of this decision, which the plaintiff must suffer through no fault of her own, compels the detailed analysis of the Act which follows. Hopefully, this analysis will serve as a framework that will assist both lawyers and non-lawyers in achieving consistent compliance with the provisions of the Act in the future.

## II. FACTS

This action arises out of an injury to plaintiff that occurred when she attended a softball game on May 27, 1978, at Emile Griffith Park, recreational facility in St. Thomas, Virgin Islands, owned and operated by the defendant. The bleachers for spectator-viewing of the game were not covered and not shielded by adequate fencing. Since it had rained that day and the benches were wet, plaintiff and the other spectators were standing in the bleacher area at the time the injury occurred. Plaintiff was struck by a broken bat which was propelled from a batter at home plate into the bleachers, and she suffered a laceration to the forehead. Plaintiff was immediately taken to the Knud-Hansen Memorial Hospital, owned and operated by defendant, where five sutures were administered to close her wound, which has healed but has resulted in a visible, permanent scar.

Shortly after the incident, plaintiff contacted the Attorney General's Office and the Department of Conservation and Cultural Affairs, seeking an administrative settlement of the matter. On or about July 22, 1978, about two months after the injury, plaintiff wrote a letter to Mr. Freeman Dawson, defendant's employee in charge of Parks and Recreation, advising him of her claim. During September or October 1978, after not having received a response from Mr. Dawson, plaintiff retained counsel to handle her case. On February 2, 1979, Mr. Dawson finally responded to plaintiff's letter, admitting that the defendant had actual knowledge of plaintiff's injury. The record does not reveal any further action until the complaint was filed with the court on May 23, 1980, a few days before the expiration of the two-year statute of limitations for filing such complaints with the court and the two-year deadline for filing such tort claims with the government.

No claim or notice of intention to file a claim has been filed with the Governor or the Attorney General and no motion for permission to file a late claim has been filed. In addition, no service of the complaint was made on the Governor and the Attorney General until

May 29, 1980, and May 30, 1980, respectively, more than two years after the date of the incident on May 27, 1978.[1]

After defendant's motion to dismiss was made, both sides were permitted to submit affidavits and legal memoranda which have been considered by the court in addressing the issues presented.

## III. HISTORICAL DEVELOPMENT

The provisions of the Act have been in effect since November 15, 1971. Prior to that enactment, the government enjoyed immunity from tort actions, pursuant to Sec. 2(b) of the Revised Organic Act of 1954, which stated among other things:

> . . . Provided that no tort action shall be brought against the Government of the Virgin Islands or against any officer or employee thereof in his official capacity without the consent of the legislature . . . 48 U.S.C. § 1541 (1970).

This immunity from tort action was waived occasionally on an ad hoc basis by the legislature through the enactment of special legislation granting consent to particular individuals or firms to sue the government.

This practice continued until September 2, 1971, when it was held by the District Court to be violative of the equal protection clause and contrary to federal law which prohibits territorial legislatures from enacting special laws when a general law could be made applicable. Thomas v. Government of the Virgin Islands, 8 V.I. 259, 333 F.Supp. 961 (D.V.I. 1971). Although the ruling was given prospective application only, it stated unequivocally that the defense of sovereign immunity would thereafter be enforced and cases against the government would be dismissed unless the waiver of immunity was granted pursuant to a general consent statute, instead of by special legislation.

In response to the Thomas ruling, the Legislature enacted the Act, a general consent statute by which the government waived its immunity from tort actions and liability up to a maximum of

---

[1] The terms "claim" and "complaint" are not used synonymously because the Act (1) requires claims to be filed with the Governor and Attorney General, and (2) requires compliance with court rules which, among other things, state that a civil action is commenced by filing a complaint with the court. Fed. R. Civ. P. 3. Accordingly, "claim" is used in reference to administrative filings, and "complaint" is used in reference to judicial filings. The fact that an application for permission to file a late claim must be filed with the court does not alter this distinction, because once permission is granted the claim must then be filed with the Governor and the Attorney General.

$25,000 per claim.[2] This waiver of immunity is applicable to all individuals and firms; however, it is not absolute. Instead, it is subject to certain pre-conditions and compliance requirements. Indeed, 33 V.I.C. § 3408 compels strict compliance with the procedural provisions of the Act to effectuate a valid waiver, and 33 V.I.C. § 3409 mandates that no judgment can be granted in favor of any claimant unless the provisions of the Act, whether mandatory or discretionary, are met.

Inevitably, the language of this new statute led to different interpretations concerning the filing requirements, and these were initially resolved by the District Court in Richards v. Government of the Virgin Islands, 10 V.I. 6 (D.V.I. 1973). Recognizing the relatively recent enactment of the Act (less than two years) and the unfamiliarity of the V.I. Bar with its provisions, the court considered the plaintiff's misinterpretation of the filing requirement to be an excusable one, and therefore granted the plaintiff's motion for permission to file a belated tort claim. Although the plaintiff in Richards had failed to file her claim with the Governor within ninety days after its accrual, her motion for permission to file a late claim and her timely filing of that motion within two years clearly fell within the authority vested in the court by the discretionary exception of the Act. Significantly, the court emphasized the dual-filing requirement of the Act, i.e., filing the claim or notice with the government and filing the complaint with the court, and warned that future claims should be filed in strict compliance with the statutory requirements.[3] Despite this warning, noncompliance continued in subsequent years, but the courts displayed leniency in only a few cases in which their discretionary powers could be invoked in accordance with the statutory exceptions. See Rodgers v. IBEC Housing Co., V.I., Inc., 12 V.I. 166 (D.V.I. 1975); Yeamans v. Snook, 15 V.I. 129 (D.V.I. 1979). In other cases there has been rigid enforcement of the Act, resulting in dismissal for lack of subject

---

[2] Act No. 721, approved June 9, 1961, codified at 33 V.I.C. §§ 3401–3404, created an administrative procedure for the settlement of tort claims up to $1,000 against the Government, but did not waive sovereign immunity nor create any right to resort to the courts. Silverlight v. Huggins, 9 V.I. 123, 347 F.Supp. 895 (D.V.I. 1972), aff'd in part, rev'd in part, 10 V.I. 638, 488 F.2d 107 (3d Cir. 1973).

[3] Although dual filing is authorized, the deadlines are not necessarily contemporaneous. Indeed, the Act does not require any filings with the court within 90 days! Contra, Richards v. Government, supra. Thus, the filing of claims with the Governor and Attorney General is governed by the time limitations of the Act, while the filing of complaints with the court is governed by general statute of limitations.

175

matter jurisdiction. See V.I. Telephone Corp. v. Government, 13 V.I. 405 (Terr. Ct. 1977); George v. Boynes, 13 V.I. 582, 435 F.Supp. 995 (D.V.I. 1977).

## IV. ANALYSIS

Chapter 118 of Title 33 of the V.I. Code contains the various categories of tort claims involving the Government of the Virgin Islands and is comprised of thirteen sections (§§ 3401–3413). These categories may be classified as follows:

| CATEGORY | ACT NO. | DATE | SECTIONS |
|---|---|---|---|
| 1. Administrative Tort Claims of $1,000 or less | #721 | June 9, 1961 | §§ 3401–3404 |
| 2. Uncollectible Claims | #1561 | Feb. 3, 1966 | § 3406 |
| 3. Storm Claims | #2499 | July 16, 1969 | § 3405 |
| 4. Abatement of Claims | #2605 | Jan. 15, 1970 | § 3407 |
| 5. Tort Claims—Waiver of Immunity up to $25,000 | #3128 | Nov. 15, 1971 | §§ 3408–3413 |

Category No. 5 is the subject matter of this action, and that is the category which has become known as the Tort Claims Act, even though other categories of torts are addressed in Chapter 118. Thus, the six sections which constitute the Act (§§ 3408–3413) are analyzed below.

*SECTION 3408—Waiver of Immunity from Liability*

■ This section constitutes the government's waiver of its immunity from liability and action, and its consent to be liable for property damage or loss, and for personal injury or death caused by an employee while acting within the scope of employment. However, the government's liability is specifically conditioned upon compliance with the provisions of sections 3409 through 3413. It is therefore obvious that, except as otherwise provided, noncompliance can effectively nullify the government's waiver and consent, and thus deprive the court of subject matter jurisdiction.

*SECTIONS 3409 and 3410*

In establishing limitations regarding (1) the time of filing claims and notices of intention to file claims (§ 3409) and (2) the method for

filing, service, and the contents of claims and notices (§ 3410), these sections are crucial in determining whether the waiver conditions have been met. For ease in analysis, they are arranged in outline form before being applied to the facts in this case.

### SECTION 3409—Time of Filing Claims and Notices of Intention to File Claims

This section may be broken down into five basic parts, as follows:

1. A re-emphasis of the warning that no judgment shall be granted in favor of any claimant unless the conditions enumerated in the section are satisfied.
2. Subsection (a) regarding land claims against the V.I. Government.
3. Subsection (b) regarding claims by executors or administrators for wrongful death against the V.I. Government.
4. Subsection (c) regarding claims for property damage or personal injury caused by an officer or employee of the Government while acting within the scope of employment.
   (a) The claim should be filed within ninety days after the date of its accrual.
   (b) The claimant may file a written notice of intention to file a claim within the same ninety-day period.
   (c) If the notice of intention to file a claim is timely filed, the claim may then be filed within two years after the date of its accrual.
5. The court's discretionary power to permit the filing of a late claim within two years after the accrual thereof or within two years after the decedent's death, after proper and timely application is made and after the following conditions are met:
   (a) A motion for permission to file a late claim must be filed by the late claimant.
   (b) Affidavit(s):
       (1) Must accompany motion.
       (2) Must state reasonable excuse.
       (3) Must show Government had timely and actual knowledge of the incident.
   (c) The proposed claim:
       (1) Must accompany motion.
       (2) Must contain all § 3410 information.

177

(d) Prejudice to Government:
    (1) If substantial, motion must be denied.
    (2) If not substantial, motion may be granted.
(e) Legal disability of claimant:
    (1) If so, claim may be presented two years after disability removed.
    (2) If not, motion may be granted.

### *SECTION 3410—Filing, Service and Contents of Claim or Notice of Intention*

This section may also be broken down into five basic parts, as follows:

1. The claim or notice of intention shall be filed in the Office of the Governor.
2. A copy of the claim or notice of intention shall be served on the Attorney General.
3. A written receipt shall be issued to the claimant from the Government with the date of filing shown.
4. The claim and the notice of intention shall state the following:
   (a) The claim:
       (1) Time when claim arose.
       (2) Place where claim arose.
       (3) Nature of claim.
       (4) Items of damage or injuries sustained.
       (5) Total sum claimed.
   (b) The notice of intention to file claim:
       (1) Time when claim arose.
       (2) Place where claim arose.
       (3) Nature of the claim.
5. The claim or notice of intention must be verified.

### *SECTIONS 3411, 3412, and 3413*

The provisions of the Act regarding the Conditions of Judgment (§ 3411), Payment of Judgment (§ 3412), and Trial by Judge (§ 3413) are self-explanatory and unambiguous. They have triggered relatively few judicial interpretations and do not relate directly to the issues of this case. Thus, no detailed analysis of these sections is necessary.

In applying the legal requirements outlined above to the facts of this case, it is clear that this claim arises under § 3409(c) because of

the personal injuries involved. It is also clear that the following deficiencies exist with respect to the filing of plaintiff's claim:

1. No claim was filed by plaintiff within the ninety-day period after May 27, 1978, the date of the incident, as required by § 3409.
2. No notice of intention to file a claim was filed within the aforesaid ninety-day period, as required by § 3409.
3. No application or motion for permission to file a late claim has been filed by plaintiff, as required by § 3409.
4. The affidavit submitted was not timely filed, and was submitted in response to defendant's motion to dismiss, not in support of nor accompanying a motion for permission to file a late claim, as required by § 3409.
5. No proposed claim, which is required to accompany the motion for permission and to contain all § 3410 information, was filed, as required by § 3409.
6. No claim or notice of intention was filed with the Office of the Governor, as required by § 3410.
7. No copy of the claim or notice of intention was served on the Attorney General, as required by § 3410.
8. Since no claim or notice of intention was filed, neither the content requirements nor the verification mandate was complied with, as required by § 3410.
9. No judgment can be granted on the complaint filed with the court on May 23, 1980 because no claim, notice of intention, or application for permission was ever filed, as required by § 3409.
10. Even if the complaint filed with the court on May 23, 1980 was considered to be a "claim" for purposes of §§ 3409 and 3410, the service of that claim on the Governor on May 29, 1980 and on the Attorney General on May 30, 1980 violated the two-year deadline for filing the claim, as provided in § 3409.

These legal deficiencies far outweigh the good faith of plaintiff, during the early period of this claim, as she struggled through her unfamiliarity with the law, while hoping to avoid litigation and to achieve an administrative settlement of the matter. Indeed, it is settled that ignorance of the law and intent to avoid litigation are not sufficient to justify the untimely filing of a claim. V.I. Telephone Corp. v. Government, supra; Prince v. Government, Civil No. 76/74, D.V.I. (1976). Since plaintiff retained counsel in September or

October 1978, there was one year and eight months remaining in which an application for permission to file a late claim could have been filed.[4] This was not done, and obviously permission could not be granted where no application was ever filed within the two-year period, which has already expired. Because this issue was not raised in prior case law, it appears that counsel has misinterpreted the Act to authorize a late filing, even if only the following three criteria are met:

1. Reasonable excuse for failure to timely file claim or notice of intention.
2. Actual and timely knowledge by government of facts constituting claim.
3. No substantial prejudice to the government.

This is unfortunate because these three criteria constitute only a portion of the sub-parts of § 3409, enumerated above, and they can only be considered if other sub-parts, such as the filing of the motion, affidavit and proposed claim, are complied with.

In this case, since no motion, affidavit, or proposed claim was filed, no late filing can be authorized, although the government had actual and timely knowledge of the facts and there was no prejudice to the government. Even if the court accepted the affidavit filed in opposition to defendant's motion as a § 3409 submission, it would still be a nullity because it was not filed until after the two-year limitation period had expired. Similarly where, as here, the filing of a claim would be so late as to put it beyond the two-year filing limit, the court cannot exercise its discretionary authority.

Moreover, the dual-filing requirement as construed in Richards v. Government, supra, has been violated. The only document filed by plaintiff was the complaint, which was filed with the court. No claim or notice of intention to file a claim was filed with the Governor and the Attorney General, and plaintiff's letter of July 22, 1978, to Mr. Freeman Dawson does not satisfy those requirements. Indeed, the facts show that even if the court strained its imagination to construe the service of the complaint on the Governor and the Attorney General as constituting "filing of the claim" and "service of the claim" under § 3409, such filing and service would be invalid since they were executed more than two years after May 27, 1978, the date when the cause of action accrued.

---

[4] The court makes no finding as to whether the attorney of record for the plaintiff was the attorney originally retained.

■ Accordingly, plaintiff not only has failed to comply with the procedural requirements of the Act, but also has failed to satisfy those provisions that would enable the court to exercise its discretionary authority to permit the filing of a late claim.[5] Rule 12(b)(1) of the Federal Rules of Civil Procedure therefore authorizes dismissal of plaintiff's complaint for lack of subject matter jurisdiction, and although defendant did not file its motion to dismiss until the date of trial, it was timely filed because such motions may be raised at any time, even at the appellate level. C. WRIGHT AND A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1350 (1976).

## V. CONCLUSION

For the foregoing reasons, the defendant's motion to dismiss for lack of subject matter jurisdiction will be GRANTED.

## ORDER

For the reasons stated in the accompanying opinion, it is hereby

ORDERED that defendant's motion to dismiss is GRANTED, and this matter is hereby DISMISSED.

---

[5] Plaintiff may still be able to obtain up to $1,000 in administrative settlement of her claim pursuant to § 3402. Although such a claim must be submitted in writing within six months of the injury, the Governor is authorized to extend that time limit for reasonable cause. Plaintiff's diligent effort to obtain an early settlement, plus her freedom from fault, may justify such an extension even at this late date.