**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-2255
_____

JAMILA RUSSELL; L.T.

v.

SUPERIOR COURT MARSHAL CHRISTOPHER
RICHARDSON,
IN HIS INDIVIDUAL AND OFFICIAL CAPACITY;
GOVERNMENT OF THE VIRGIN ISLANDS; SUPERIOR
COURT OF THE VIRGIN ISLANDS,

Superior Court of the Virgin Islands,
Superior Court Marshal Christopher Richardson,
in his individual and official capacity,

Appellants
_____

On Appeal from the District Court
of the Virgin Islands
(D.V.I. Civ. No. 1-15-cv-00049)
Honorable Anne E. Thompson, U.S. District Judge
_____

Argued: May 22, 2018

Before: KRAUSE, ROTH, and FISHER, *Circuit Judges*

(Opinion Filed: September 25, 2018)

Gordon C. Rhea, Esq.        [Argued]
Richardson Patrick Westbrook & Brickman
1037 Chuck Dawley Boulevard
Building A
Mount Pleasant, SC 29464

Yvette D. Ross-Edwards, I, Esq.
Law Office of Yvette Ross-Edwards
429 King Street, Suite 8
Frederiksted, VI 00840

　　　*Counsel for Plaintiff-Appellees Jamila Russell and
L.T.*


Paul L. Gimenez, Esq.        [Argued]
Superior Court of the Virgin Islands
Office of General Counsel
P.O. Box 70
St. Thomas, VI 00804

　　　*Counsel for Defendant-Appellant Superior Court of
the Virgin Islands and Christopher Richardson*

Ian S.A. Clement, Esq.
Su-Layne U. Walker, Esq.
Office of Attorney General of Virgin Islands
Department of Justice
34-38 Kronprindsens Gade

GERS Complex, 2nd Floor
St. Thomas, VI 00802

*Counsel for Defendant-Appellee Government of the Virgin Islands*

_____

OPINION OF THE COURT
_____

KRAUSE, *Circuit Judge*.

In this tragic case, after Appellee Jamila Russell enlisted the help of the Virgin Islands Superior Court and its Court Marshals with her truant teenage son, L.T., Deputy Marshal Chris Richardson allegedly shot him at his home, unarmed and mostly undressed, rendering him a quadriplegic. Russell filed suit and the District Court denied the motions of Richardson and the Superior Court to dismiss on various immunity grounds. In this interlocutory appeal, we consider, among other things, whether judicial immunity extends to protect an officer from a suit challenging the manner in which he executed a court order. Because we, like the District Court, conclude it does not, and the District Court's thorough and careful opinion properly disposed of the motions in almost all respects, we will affirm except as to Appellees' claim for gross negligence, for which the Virgin Islands has not waived sovereign immunity and which thus should be dismissed on remand.

## I. Background

### A. Factual Background[1]

At the time of the conduct at issue in this case, L.T. was 15 years old and had been designated by the Virgin Islands Superior Court a "Person in Need of Supervision" (PINS), meaning a "child" who, among other things, "habitually disobeys the reasonable demands of the person responsible for the child's care and is beyond their control." V.I. Code Ann. tit. 5, § 2502(23). That designation also subjected L.T. to a court order directing him to "follow the reasonable rules of his mother while living with her." JA 18. Apparently, however, his mother continued to have problems with his behavior.

One day, concluding she needed "assistance" with ensuring L.T.'s compliance, Russell contacted the Superior Court and "requested that [L.T.] be brought before the judge to answer for his behavior." JA 18. According to the complaint, she also "advised that her son was at home in his bed." JA 18. In response to her request, several Superior Court Marshals, including Deputy Marshal Christopher Richardson, arrived at Russell's home later that day. L.T. was at that point "relaxing in his room, in his underwear and

---

[1] As this is an appeal of the denial of motions to dismiss for failure to state a claim and lack of subject matter jurisdiction, the factual allegations are taken from the operative complaint and accepted as true. *Krieger v. Bank of Am., N.A.*, 890 F.3d 429, 434 (3d Cir. 2018); *Batchelor v. Rose Tree Media Sch. Dist.*, 759 F.3d 266, 271 (3d Cir. 2014).

4

unarmed." JA 19. The precise sequence of events that unfolded is unclear at this stage, but, according to the complaint, "Richardson shot [L.T.] under circumstances that were unjustified and an excessive use of force since [L.T.] was unarmed and did not threaten bodily harm to the marshals or third parties as he was attempting to run past the marshals."[2] JA 19.

L.T. was airlifted to Puerto Rico for medical treatment, but the shooting rendered him a quadriplegic.

## B. Procedural History

Russell eventually filed this action on behalf of herself and L.T. (collectively, "the Family")[3] in the District Court of the Virgin Islands. The operative complaint included claims against Richardson under 42 U.S.C. § 1983 for excessive

---

[2] In their brief, Appellants take it upon themselves to offer additional clarity by pointing to extra detail found not in the complaint but rather in the Marshals' own affidavits and an internal incident report that the Marshal's Office filed with the Superior Court after the shooting. At this stage, however, we, like the District Court, "must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

[3] L.T. reached the age of majority after the complaint was filed, and, as the caption here reflects, he is now a party to this case in his own right.

force and under territorial law for negligence, gross negligence, and negligent and intentional infliction of emotional distress, as well as claims against the Superior Court for negligence, negligent hiring and retention, and vicarious liability.[4]  As relevant to the claims at issue in this appeal, Richardson and the Superior Court (together, "Appellants") filed motions to dismiss under Federal Rules of Procedure 12(b)(1) and 12(b)(6), with Richardson arguing he enjoyed a form of absolute immunity known as "quasi-judicial" immunity and qualified immunity with respect to the § 1983 claim, and both parties arguing they enjoyed sovereign immunity with respect to the tort claims.

The District Court rejected those arguments.  As to Richardson's claim of quasi-judicial immunity, the District Court acknowledged that many cases have granted such immunity to officers who have been sued for their role in enforcing court orders but determined that the reasoning behind those cases "d[id]n't cover shooting somebody." JA 69.  The Court therefore held that absolute immunity did not apply.  And while the Court recognized that the qualified immunity issue should be decided "at the earliest point possible in the case," JA 12; *see Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curiam) (noting "the importance of resolving immunity questions at the earliest possible stage in litigation"), it found this case "too fact sensitive for [it] to

---

[4] While the complaint also named as a defendant the Government of the Virgin Islands, none of the claims was expressly directed at the Government and it is not a party to this appeal.  It has, however, filed a brief in support of Appellants.

6

make that kind of ruling now, without discovery," JA 85. Instead, it explained, Richardson would be permitted to renew the defense once a "fuller factual record ha[d] been developed." JA 12.

As to the sovereign immunity asserted by both defendants, the District Court recognized that, to bring a tort claim against the Virgin Islands Government, its departments, or its employees in their official capacities, a plaintiff must comply with the terms of the Virgin Islands Tort Claims Act, V.I. Code Ann. tit. 33, §§ 3401–3417, as a predicate to the courts' jurisdiction. But it rejected defendants' argument that the Family had failed to do so, either by filing an inadequate "notice of intention to file a claim" or by failing to file a "claim." "[S]ubstantial compliance with the statute is all that is required," JA 11 (quoting *Brunn v. Dowdye*, 59 V.I. 899, 910 (2013)), the Court observed, and the Family had "sufficiently complied,"[5] JA 11.

---

[5] The District Court did dismiss claims for "negligent hiring and retention and negligent supervision/training contained in Counts III and IV" for failure to comply with the VITCA, JA 11, but those claims are not at issue in this appeal. We note, for the sake of clarity, that the references to "Counts III and IV" appear to be references to each of the two counts listed sequentially in the complaint as "Count III," the first of which was for negligent training and supervision and the second of which was for negligent hiring and retention. The actual Count IV of the complaint asserted vicarious liability against the Superior Court as Richardson's employer, which, of course, merely reflects the "basis to extend the liability of [Richardson's] underlying torts" reflected in the VITCA itself. *Bonelli v. Gov't of the Virgin Islands*, No. ST-

7

Following the denial of their motions to dismiss, Appellants filed an omnibus motion for reconsideration, clarification, and a more definite statement, and asked the District Court to stay discovery until both that motion and the forthcoming appeal to this Court had been resolved. But they soon withdrew the omnibus motion, and the District Court declined to issue a stay, ordering discovery to proceed "solely on the issue of . . . qualified immunity," JA 14. Appellants then filed this timely appeal. Appellants also filed a motion to stay discovery pending appeal, which we denied. Discovery continued and, by the time of oral argument in this case, was nearly complete.

## II. Jurisdiction and Standard of Review

The District Court had jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1367(a). Under the collateral order doctrine, we have jurisdiction to review a denial of quasi-judicial or qualified immunity insofar as it turns on an issue of law. *Mitchell v. Forsyth*, 472 U.S. 511, 529 (1985); *Hamilton v. Leavy*, 322 F.3d 776, 782 (3d Cir. 2003). The question whether that doctrine also vests us with jurisdiction over a denial of the Virgin Islands' sovereign immunity has not previously been addressed by this Court, but for the reasons we will discuss in more detail below, we conclude that it does. *See infra* Part III.C.1.

---

13-CV-175, 2015 WL 1407259, at *5 (V.I. Super. Ct. Mar. 19, 2015), *aff'd*, 67 V.I. 714 (2017); *cf. Lomando v. United States*, 667 F.3d 363, 373 n.8 (3d Cir. 2011) ("All [Federal Tort Claims Act] liability is *respondeat superior* liability[.]" (citation omitted)).

8

We review de novo a denial of quasi-judicial, qualified, or sovereign immunity. *Karns v. Shanahan*, 879 F.3d 504, 512 (3d Cir. 2018); *Dotzel v. Ashbridge*, 438 F.3d 320, 324–25 (3d Cir. 2006).

## III.  Discussion

Appellants contend that the District Court erred in denying Richardson quasi-judicial immunity and qualified immunity and in denying them both sovereign immunity.[6] We address each of these three immunity doctrines below.

---

[6] Richardson's quasi-judicial and qualified immunity defenses apply to the extent he has been sued in his individual capacity, and his sovereign immunity defense applies to the extent he has been sued in his official capacity. *See Kentucky v. Graham*, 473 U.S. 159, 166–67 (1985) ("[A]n official in a personal-capacity action may, depending on his position, be able to assert personal immunity defenses . . . .  In an official-capacity action, these defenses are unavailable.  The only immunities that can be claimed in an official-capacity action are forms of sovereign immunity[.]" (citations omitted)); *Davis v. Knud-Hansen Mem'l Hosp.*, 635 F.2d 179, 186 (3d Cir. 1980) (holding that the Virgin Islands' statutory sovereign immunity "does not provide any immunity to Government officers or employees sued in their individual capacities").

### A.  Quasi-Judicial Immunity

We start with Richardson's argument that he cannot be sued for using excessive force because, just as a judge enjoys absolute "judicial immunity" for an official act like issuing a PINS order, so too does Richardson enjoy "quasi-judicial" immunity for his official acts in enforcing that order.  We briefly review the history of this immunity doctrine before turning to its application to this case.

### 1.  *The Quasi-Judicial Immunity Doctrine*

Quasi-judicial immunity, as one might guess, evolved out of its well-known namesake, judicial immunity.  "Few doctrines were more solidly established at common law than the immunity of judges from liability for damages for acts committed within their judicial jurisdiction[.]"  *Pierson v. Ray*, 386 U.S. 547, 553–54 (1967).  That immunity secures a "general principle of the highest importance to the proper administration of justice": ensuring that a "judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself," *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 347 (1871), and "without harassment or intimidation" in those "controversies sufficiently intense to erupt in litigation," *Butz v Economou*, 438 U.S. 478, 512 (1978).  Judicial immunity is thus essential to judges' ability to exercise "independent and impartial . . . judgment." *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 435 (1993).

The fair administration of justice depends not only on judges, however, and these same concerns apply to "certain others who perform functions closely associated with the

10

judicial process." *Cleavinger v. Saxner*, 474 U.S. 193, 200 (1985). For that reason, so-called "quasi-judicial" immunity has been extended over time to protect a range of judicial actors, including (1) those who make discretionary judgments "functional[ly] comparab[le]" to judges, such as prosecutors and grand jurors, *Imbler v. Pachtman*, 424 U.S. 409, 423 n.20 (1976); (2) those who "perform a somewhat different function in the trial process but whose participation . . . is equally indispensable," such as witnesses, *Briscoe v. LaHue*, 460 U.S. 325, 345–46 (1983); and (3) those who serve as "'arms of the court,' . . . fulfill[ing] a quasi-judicial role at the court's request," such as guardians ad litem or court-appointed doctors, *Hughes v. Long*, 242 F.3d 121, 126 (3d Cir. 2001). In this case, we focus on the last category.

In determining whether a government actor was fulfill[ing] a quasi-judicial role at the court's request, we take a "'functional' approach to immunity," *Forrester v. White*, 484 U.S. 219, 224 (1988). That is, "we examine the nature of the functions with which a particular official or class of officials has been lawfully entrusted, and we seek to evaluate the effect that exposure to particular forms of liability would likely have on the appropriate exercise of those functions." *Id.* Merely being "part of the judicial function," even an "extremely important" part, will not automatically entitle one to quasi-judicial immunity. *Antoine*, 508 U.S. at 435–36 (refusing to extend such immunity to court reporters). Even a judge will not enjoy immunity for "nonjudicial actions, *i.e.*, actions not taken in [her] judicial capacity," or for judicial actions "taken in the complete absence of all jurisdiction." *Mireles v. Waco*, 502 U.S. 9, 11–12 (1991) (per curiam). Absolute immunity, we have been told time and again, is "strong medicine," *Forrester*, 484 U.S. at 230 (citation

11

omitted), and the "presumption is that qualified rather than absolute immunity is sufficient to protect government officials in the exercise of their duties," *Burns v. Reed*, 500 U.S. 478, 486–87 (1991). Accordingly, an "official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question." *Id.* at 486.

## 2. *Application to This Case*

Appellants here contend that the relevant function that justifies affording Richardson absolute immunity is "the enforcement of judicial orders by a court's marshal." Appellants' Br. 22. Reading two of our precedents and one from the Tenth Circuit as standing for a categorical rule that "any public official acting pursuant to a court directive is immune from suit," regardless of the specific action challenged in that suit, Appellants argue that Richardson enjoys immunity from the excessive force claim here because at the time he shot L.T. he was acting "at the direction of a judge." Appellants' Br. 21. And, according to Appellants, "[t]here simply cannot be one rule for a deputy who is able to accomplish th[at] directive without incident and a different rule for a deputy who meets with resistance that results in an injury or death." Appellants' Br. 27.

The problem with this argument is that it ignores the distinction between claims based on the actions actually authorized by court order, which are barred by quasi-judicial immunity, and those based on the manner in which a court order is enforced, which are not. As we explain below, that distinction dates to common law, has been consistently recognized by the Courts of Appeals, and is all but dictated by the "functional" approach to modern-day immunity. It

12

also leads us to affirm the District Court's denial of absolute immunity to Richardson.

We start with the common law, which informs our consideration of immunities available under § 1983. *Rehberg v. Paulk*, 566 U.S. 356, 362–63 (2012). Historically, the "rule" was that a "ministerial officer [wa]s protected in the execution of process issued by a court," meaning that, for example, a "sheriff" was "protect[ed] . . . in making [an] arrest." *Tuttle v. Wilson*, 24 Ill. 553, 561 (1860). It was also clear, however, that when such a "quasi-judicial officer . . . act[ed] ministerially," he could be "liable for carelessness or negligence like any other ministerial officer." Floyd R. Mechem, *A Treatise on the Law of Public Offices and Officers* § 643, at 429 (Chicago, Callaghan & Co. 1890) (emphasis omitted) (hereinafter Mechem). And because an arrestee was "entitled to be treated with ordinary humanity, and any unnecessary severity could not be justified by the writ," Thomas M. Cooley, *A Treatise on the Law of Torts or the Wrongs Which Arise Independent of Contract* 395 (Chicago, Callaghan & Co. 1879), the common law provided that, "though the process for the arrest of the defendant is valid, yet the officer may render himself liable to the defendant for abuses of his process, as where the officer . . . uses excessive force," Mechem § 771, at 509. The authorization/manner distinction thus applied with particular force to officers tasked with making arrests.

Contrary to Richardson's contention, our own case law to date has adhered to this distinction. In *Lockhart v. Hoenstine*, 411 F.2d 455 (3d Cir. 1969), where the defendant had sued the court prothonotary for unlawfully refusing to file his appeal papers, we held that the prothonotary enjoyed

13

absolute immunity because his refusal was "at the direction of the court," and "any public official acting pursuant to court directive is . . . immune from suit." *Id.* at 460. Likewise, in *Waits v. McGowan*, 516 F.2d 203 (3d Cir. 1975), we granted immunity to an investigator for the public defender for "act[ing] under orders of the . . . court" to help extradite the plaintiff for prosecution, *id.* at 205, reasoning that the investigator's "only function . . . [wa]s to assist in the defense of the accused" and he "ha[d] no power to deprive anyone of his or her rights," *id.* at 207. We observed that other cases had immunized "police officers engaged in ministerial functions under [a judge's] direction," *id.* at 206, but we noted that such immunity only extended to "officers acting *properly* under a warrant or other lawful process," *id.* at 207 n.6. These cases thus distinguished between acts that were authorized by court order and acts that exceeded such authorization, but neither squarely addressed whether quasi-judicial immunity extends to the manner in which an officer executes a court order.

Other Courts of Appeals have confronted that question, however, and have consistently concluded that absolute immunity does not extend so far.

Richardson purports to draw support from *Valdez v. City and County of Denver*, 878 F.2d 1285 (10th Cir. 1989), where the Tenth Circuit "h[e]ld that an official charged with the duty of executing a facially valid court order enjoys absolute immunity from liability for damages in a suit challenging conduct prescribed by that order." *Id.* at 1286. But the *Valdez* court went on to caution that, "of course, an official performing ministerial tasks with less than due care may be liable for damages." *Id.* at 1289 n.6. And the

14

following year, the Tenth Circuit even more clearly rejected the argument that officers enjoy quasi-judicial immunity for excessive force claims, explaining that, "[w]hile the immunity granted in *Valdez* protects defendants from liability for the actual arrest, it does not empower them to execute the arrest with excessive force," nor does it provide "absolute[] immun[ity] from liability for the *manner* in which [officers] carry out otherwise proper court orders." *Martin v. Bd. of Cty. Comm'rs*, 909 F.2d 402, 404–05 (10th Cir. 1990) (per curiam). Instead, the court reasoned, because a judicial order "contains an implicit directive" that it be "carried out in a lawful manner," officers who "exceed[] legal bounds in executing [that order] . . . have *a fortiori* violated the very . . . order under which they seek the shelter of absolute immunity." *Id.* at 405.

The Seventh and Ninth Circuits share in that view.[7] In *Richman v. Sheahan*, 270 F.3d 430 (7th Cir. 2001), the court observed that the grounds for extending quasi-judicial immunity are "most compelling" when the suit challenges "conduct specifically directed by the judge, and not simply the manner in which the judge's directive was carried out," *id.* at 437. The latter type of suit neither amounts to a "collateral attack on the judge's order," nor places the officer

---

[7] *Cf. Martin v. Hendren*, 127 F.3d 720, 721–22 (8th Cir. 1997) (upholding dismissal of an excessive force claim against a courtroom officer where the judge explicitly ordered the officer to "put the cuffs on [the plaintiff]" on the grounds that the officer was "obeying specific judicial commands to restore order in the courtroom" and he "carr[ied] out a judicial command in the judge's courtroom and presence").

15

in the position of "being called upon to answer for wrongdoing directed by the judge" that he is "powerless to avoid." *Id.* at 436, 438. Rather, the court explained, such a suit focuses solely on the officer's "own conduct." *Id.* at 438. As a result, *Richman* held, quasi-judicial immunity should extend to officers "who do nothing more than implement" a judicial order—but no further. *Id.* The Ninth Circuit too has applied these principles to reject quasi-judicial immunity where the official "act[s] beyond the scope of [the judge]'s express and implied instructions," and so is "exposed to liability (but still protected by qualified immunity) only because he allegedly went beyond what the judge ordered." *Brooks v. Clark Cty.*, 828 F.3d 910, 917–18 (9th Cir. 2016).[8]

---

[8] Although Appellants do not cite the case, both the Seventh and Ninth Circuits wrestled with the question whether *Mireles v. Waco*, 502 U.S. 9 (1991) (per curiam), suggested a different result. We agree with them that it does not. In *Mireles*, the Supreme Court held that a judge maintained judicial immunity for expressly ordering the plaintiff brought to his courtroom "forcibly and with excessive force." *Id.* at 10. While noting that "[o]f course, a judge's direction . . . to carry out a[n] . . . order with excessive force" is not a judicial act, the Court reasoned that the "relevant inquiry is the 'nature' and 'function' of the act, not the 'act itself,'" for "if only the particular act in question were to be scrutinized, then any mistake of a judge in excess of his authority would become a 'nonjudicial' act, because an improper or erroneous act cannot be said to be normally performed by a judge." *Id.* at 12–13. In other words, *Mireles* arose in the traditional judicial immunity context, as the plaintiff had "challenged the judge's order directly . . . by suing the judge," and, though the judge there had allegedly

Today, we join our Sister Circuits and make explicit what was implicit in our decisions in *Lockhart* and *Waits*: Quasi-judicial immunity extends only to the acts authorized by court order, i.e., to the execution of a court order, and not to the manner in which it is executed. Here, the court order at issue is the PINS order, which merely required L.T. to follow his mother's "reasonable rules," and the Family does not claim that Richardson violated the law by performing acts authorized under that order; instead, they claim that Richardson exceeded the authorization of that order and used excessive force in the manner of its execution. And, indeed, given the terms of the PINS order, the act of shooting L.T. was obviously not "at the direction of a judge."[9] Because an

ordered the use of excessive force, the Court merely reaffirmed the basic principle that the "applicability of absolute immunity cannot turn on the correctness of the judge's decision." *Richman*, 270 F.3d at 436. The court order here, however, did not instruct Richardson to use excessive force; indeed, it did not instruct him to use any force at all. Rather, as in *Martin*, *Richman*, and *Brooks*, the basis for this suit is that Richardson employed *more* force than he was authorized by any court order to use.

[9] Nor is it even clear that the shooting occurred *while* Richardson was acting "at the direction of a judge." According to the complaint, the only reason Richardson went to the house that day was that Russell had "sought . . . assistance . . . with enforcing the court's order," JA 18—not because a judge had instructed him to do so. In any event, even assuming Richardson was acting pursuant to court order, *but see Tatis v. Allied Interstate, LLC*, 882 F.3d 422, 426 (3d Cir. 2018) (at this stage we must construe all "reasonable

17

officer's "fidelity to the specific order[] of the judge marks the boundary for labeling [his] act 'quasi-judicial,'" *Richman*, 270 F.3d at 436, and a court order "carries an implicit caveat that the officer follow the Constitution" in executing it, *Brooks*, 828 F.3d at 919, where the claim is that an officer exceeded those bounds, quasi-judicial immunity does not stand in the way. *See id.* at 917–19; *Richman*, 270 F.3d at 437–39; *Martin*, 909 F.2d at 404–05; *cf. Waits*, 516 F.2d at 207 n.6 (immunity extends only to "officers acting *properly* under . . . lawful process").

Finally, our holding is virtually compelled by the rule that any new extension of absolute immunity must be "justified . . . by the *functions* it protects and serves, not by the person to whom it attaches." *Forrester*, 484 U.S. at 227. This approach requires us first to "examine the nature of the functions with which a particular official . . . has been lawfully entrusted," *id.* at 224, with the "relevant decisional material" being the "legal and structural components of the job function," *Dotzel*, 438 F.3d at 325. We then "evaluate the effect that exposure to particular forms of liability would likely have on the appropriate exercise of those functions." *Forrester*, 484 U.S. at 224. Absent "overriding considerations of public policy," absolute immunity will not apply. *Id.*

As relevant here, Virgin Islands law assigns Superior Court Marshals the functions of "execut[ing] all writs,

---

inferences" from the pleaded facts "in a light most favorable to the non-movant"), he is not entitled to quasi-judicial immunity for the reasons we explain.

18

processes and orders of the Superior Court," and "perform[ing] such other duties incident to" the execution of those writs, processes, and orders. V.I. Code Ann. tit. 4, § 351(b). But while those functions, with which the Marshals are "lawfully entrusted," are fully protected by quasi-judicial immunity, the use of excessive force in the performance of those functions is neither "at the direction of the judge," *Waits*, 516 F.2d at 206, nor a "dut[y] incident to" the execution of the judge's order, § 351(b). We measure an officer's acts against the yardstick of that officer's functions, and—contrary to Appellants' insistence that an officer is immune for all acts incident to the execution of a court order, regardless how "less-than-perfect" those actions may be,[10] Reply Br. 8—we extend quasi-judicial immunity only to acts consistent with the "*appropriate* exercise of those functions." *Forrester*, 484 U.S. at 224 (emphasis added). The Family's claim, however, is premised on an alleged inappropriate exercise of those functions.

For all of these reasons, we will affirm the District Court's denial of quasi-judicial immunity.

---

[10] Appellants' approach would turn immunity jurisprudence on its head, ignoring the "presumption . . . that qualified rather than absolute immunity is sufficient to protect government officials in the exercise of their duties," *Burns*, 500 U.S. at 486–87, and immunizing law enforcement officers from suit for any number of civil rights violations committed while executing any court order, be it an arrest warrant, search warrant, or any other judicial directive.

### B. Qualified Immunity

We turn next to Richardson's contention that, even if absolute immunity does not apply, the claim against him should have been dismissed on qualified immunity grounds because the complaint did not plead a violation of clearly established law.

"In considering whether qualified immunity attaches, courts perform a two-pronged analysis to determine: (1) 'whether the facts that the plaintiff has alleged make out a violation of a constitutional right,' and (2) 'whether the right at issue was "clearly established" at the time of the defendant's alleged misconduct.'" *Kedra v. Schroeter*, 876 F.3d 424, 434 (3d Cir. 2017) (alterations omitted) (quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). Because "'[c]learly established' means that, at the time of the officer's conduct, the law was 'sufficiently clear' that every 'reasonable official would understand that what he is doing' is unlawful," *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018), the right must be "defined in terms of the 'particularized' factual context of th[e] case," *Kedra*, 876 F.3d at 435 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). Such "specificity . . . is especially important in the Fourth Amendment context." *Wesby*, 138 S. Ct. at 590.

The allegations here meet that standard. According to the complaint, Richardson was called to the Family's house to "assist[]" in enforcing L.T.'s PINS order and to "br[ing] [him] before the judge." JA 18. When Richardson arrived, L.T. allegedly was "relaxing," "in his underwear," and "unarmed." JA 19. And, when L.T. "attempt[ed] to run past the marshals," Richardson shot him. JA 19. These

20

allegations, taken as true, are sufficient to plead the violation of a clearly established constitutional right: the right of an unarmed individual to be free from the use of deadly force unless such force is "necessary to prevent [his] escape and the officer has probable cause to believe that [he] poses a significant threat of death or serious physical injury to the officer or others." *Tennessee v. Garner*, 471 U.S. 1, 3 (1985).

*Garner*, of course, "lay[s] out excessive-force principles at only a general level." *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (per curiam). But "general statements of the law are not inherently incapable of giving fair and clear warning to officers." *Id.* For this reason, while *Garner* usually "do[es] not by [itself] create clearly established law," it may do so in an "obvious case," *id.*, for example, where the circumstances reflect "the absence of a serious threat of immediate harm to others." *Davenport v. Borough of Homestead*, 870 F.3d 273, 281 (3d Cir. 2017); *see also Brosseau v. Haugen*, 543 U.S. 194, 199 (2004) (per curiam) ("[I]n an obvious case, [*Garner*'s] standard[] can 'clearly establish' the answer, even without a body of relevant case law.").

This is such a case. According to the complaint, Richardson used deadly force against L.T. even though there was no indication L.T. was then engaged in any misconduct beyond disobeying his mother; immediately before the incident, L.T. was allegedly lounging in his bedroom; and L.T. allegedly exited his room wearing only underwear, making it implausible to a reasonable officer that he was hiding a weapon on his person. Accepting these allegations as we must at this stage, there was no "serious threat of immediate harm to others," *Davenport*, 870 F.3d at 281, and

21

"[t]he absence of any *Garner* preconditions to the use of deadly force" makes this an "obvious case where . . . *Garner* clearly establishes the law," *Smith v. Cupp*, 430 F.3d 766, 776 (6th Cir. 2005). *See Henry v. Purnell*, 652 F.3d 524, 527, 536 (4th Cir. 2011) (en banc) (holding, where an officer shot "an unarmed man wanted for [a] misdemeanor . . . when he started running away," that "[n]othing removes this case from the straightforward context of *Garner*").

Appellants marshal two arguments to the contrary. First, they contend that the definition of the right given by the Family in its brief here—the "right to be free from injury through the use of excessive force by law enforcement officers," Appellees' Br. 23—is too general to give officers fair notice. But in defining the right at issue, we look not only to the parties' litigation positions, but also to the allegations in the complaint. *See Ashcroft v. Iqbal*, 556 U.S. 662, 673 (2009) ("[W]hether a particular complaint sufficiently alleges a clearly established violation of law cannot be decided in isolation from the facts pleaded."). And, as discussed, the allegations here were sufficient in view of *Garner*.

Second, Appellants take issue with the sufficiency of the pleading in the complaint, arguing that the District Court should have dismissed it under Federal Rule of Civil Procedure 12(b)(6) because it "d[id] not provide sufficient factual information for the framing of a proper qualified immunity defense." *Thomas v. Independence Twp.*, 463 F.3d 285, 302 (3d Cir. 2006); *see Iqbal*, 556 U.S. at 678 ("Rule 8 . . . demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."). At the very least, they argue, the District Court, before allowing limited discovery

on that defense, should have considered "other procedural tool[s]," such as requiring the Family to file a more definite statement under Federal Rule of Civil Procedure 12(e). Appellants' Br. 54.

We are not persuaded. True, where the pleading is as deficient as in *Thomas*—which featured a "textbook example of a pleading as to which a qualified defense cannot reasonably be framed," 463 F.3d at 289—a district court has "several options," such as ordering a more definite statement, *id.* at 301. But the complaint here is not devoid of factual allegations. To be sure, neither is it long on detail. To survive a motion to dismiss, however, a complaint need only contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678. The Family's complaint meets that threshold, and the District Court thoughtfully and thoroughly analyzed the complaint to conclude this case was "too fact sensitive . . . to make [a qualified immunity] ruling . . . without discovery." JA 85. The District Court thus did not disregard *Thomas* but rather hewed to its guidance that "summary judgment remains a useful tool for precluding insubstantial claims from proceeding to trial." 463 F.3d at 301 (citing *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998)). As we perceive no error in the denial of qualified immunity at this stage, we will affirm.

## C.  Sovereign Immunity

Finally, we turn to Appellants' claim of sovereign immunity under the Revised Organic Act ("Act"), the federal law that "[w]e have described . . . as the [Territory's] basic charter of government," *Pichardo v. V.I. Comm'r of Labor*,

23

613 F.3d 87, 93 n.6 (3d Cir. 2010), and that "confer[s] upon [the Virgin Islands] attributes of autonomy similar to those of a sovereign government or state," *Richardson v. Knud Hansen Mem'l Hosp.*, 744 F.2d 1007, 1010 (3d Cir. 1984). One of those attributes is that "no tort action shall be brought against the government of the Virgin Islands or against any officer or employee thereof in his official capacity without the consent of the legislature." 48 U.S.C. § 1541(b).

Before addressing the merits of Appellants' sovereign immunity claim, however, we must assure ourselves that we have jurisdiction to do so. *See Gayle v. Warden Monmouth Cty. Corr. Inst.*, 838 F.3d 297, 303 (3d Cir. 2016).

1.    *Jurisdiction*

Appellants contend that we have jurisdiction to review the District Court's denial of sovereign immunity under the collateral order doctrine, which allows certain decisions that "do not terminate the litigation" to nonetheless count as "final decisions of the district courts" if they are (1) "conclusive," (2) "resolve important questions completely separate from the merits," and (3) "would render such important questions effectively unreviewable on appeal from final judgment in the underlying action," *Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 865, 867 (1994) (quoting 28 U.S.C. § 1291). And they base that contention on *Puerto Rico Aqueduct & Sewer Authority v. Metcalf & Eddy, Inc.*, 506 U.S. 139 (1993).

*Metcalf & Eddy*, however, does not squarely answer the question of jurisdiction for this case because the Supreme Court held there that the collateral order doctrine applies to

24

the denial of a State's Eleventh Amendment immunity and we have not yet resolved whether the Eleventh Amendment applies to the Virgin Islands. *See United Steel Paper & Forestry Rubber Mfg. Allied Indus. & Serv. Workers Int'l Union AFL-CIO-CLC v. Gov't of Virgin Islands*, 842 F.3d 201, 207 n.2 (3d Cir. 2016),[11] As it turns out, however, we also need not resolve it today, because Appellants here have invoked sovereign immunity under the Revised Organic Act, and we conclude that statutory sovereign immunity, no less than Eleventh Amendment immunity, meets the criteria for the collateral order doctrine.

---

[11] The Eleventh Amendment provides, in relevant part, that federal courts lack jurisdiction to hear "any suit . . . commenced or prosecuted against one of the United States by Citizens of another State." U.S. Const. amend. XI. "While the Amendment by its terms does not bar suits against a State by its own citizens, th[e Supreme] Court has consistently held that an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." *Edelman v. Jordan,* 415 U.S. 651, 662–63 (1974). Some, but not all, United States Territories have been held to lack Eleventh Amendment protections. *Compare, e.g.*, *Norita v. Northern Mariana Islands*, 331 F.3d 690, 693–94 (9th Cir. 2003) (the Northern Mariana Islands is not protected), *with Grajales v. P.R. Ports Auth.*, 831 F.3d 11, 15 (1st Cir. 2016) (Puerto Rico is). Because neither party asks us to resolve whether the Virgin Islands falls within the Amendment's reach and we need not do so to conclude we have jurisdiction here, the question, as in *United Steel Paper*, is one "we do not decide today." 842 F.3d at 207 n.2.

The first and third criteria are easily satisfied. By providing that "no tort action shall be brought" against the Government without its consent, the Act makes clear that the Territory's immunity is an "immunity from trial and the attendant burdens of litigation . . . , and not just a defense to liability on the merits." *Fed. Ins. Co. v. Richard I. Rubin & Co.*, 12 F.3d 1270, 1281 (3d Cir. 1993). A denial of this immunity, like the denial of Eleventh Amendment immunity, is a "conclusive determination[] that [the Virgin Islands] ha[s] no right not to be sued," and the "value" of this immunity will be "for the most part lost as litigation proceeds past motion practice." *Metcalf & Eddy*, 506 U.S. at 145.

Our jurisdiction thus depends on the second criterion: whether a denial of the Virgin Islands' statutory sovereign immunity is sufficiently "important" and "separate from the merits" of the underlying action to trigger the collateral order doctrine. *Digital Equip.*, 511 U.S. at 867. In *Metcalf & Eddy*, the Court concluded that a State's invocation of Eleventh Amendment immunity met those requirements because it "involve[d] a claim to a fundamental constitutional protection." 506 U.S. at 145. But statutory immunity, the Court has made clear, is no less significant: "When a policy is embodied in a constitutional *or statutory* provision entitling a party to immunity from suit (a rare form of protection), there is little room for the judiciary to gainsay its 'importance.'" *Digital Equip.*, 511 U.S. at 879 (emphasis added). And the Court recently has characterized *Metcalf & Eddy* without regard to its constitutional dimension, describing the "particular value of a high order" there as "respecting a State's dignitary interests." *Will v. Hallock*, 546 U.S. 345,

352 (2006). The Territory's "dignitary interests" in its assertion of statutory immunity also command our respect.[12]

Having satisfied ourselves of our jurisdiction under the collateral order doctrine, we turn to the merits of Appellants' claim of sovereign immunity.

2. *Merits*

Pointing out that compliance with the requirements of the Virgin Islands Tort Claims Act (VITCA) is a prerequisite for its waiver of immunity from tort liability, Appellants argue that the Family failed to comply in two ways: first, by filing an insufficient notice of intention to file a claim, and, second, by failing to file a "claim." These arguments are perplexing, to say to the least, as they are flatly contradicted by the record.

---

[12] More than once we have found statute-based immunities to implicate sufficiently weighty interests to warrant application of the collateral order doctrine. *See Oss Nokalva, Inc. v. European Space Agency*, 617 F.3d 756, 761 (3d Cir. 2010) (doctrine applies to denial of immunity under the International Organizations Immunities Act); *Fed. Ins. Co.*, 12 F.3d at 1281–82 (same for denial of immunity under the Foreign Sovereign Immunities Act); *cf. Aliota v. Graham*, 984 F.2d 1350, 1353–54 (3d Cir. 1993) (same for order resubstituting a federal employee for the United States under the Westfall Act, which "effectively denies [the] employee's claim to absolute immunity").

We begin with the notice, the purpose of which is to give the Government "enough information to enable [it] to make an investigation in order to determine if the claims should be settled without suit." *Abdallah v. Callender*, 1 F.3d 141, 148 (3d Cir. 1993). The VITCA provides that a notice of intention must be filed in the Office of the Governor of the Virgin Islands and served on the Attorney General within ninety days after the claim accrued. V.I. Code Ann. tit. 33, § 3409(c).[13] It "shall state the time when and the place where such claim arose" and "the nature of same," and must also be "verified." *Id.* § 3410.

Less than a month after the shooting, the Family served the following notice on the Governor and Attorney General:

> **Re: Action for Personal Injury and Civil Rights Violations pursuant to 42 U.S.C. § 1983 against the Government of the Virgin Islands, Superior Court of the Virgin Islands and Marshal Carl Richardson**
>
> . . .

---

[13] While the statute states that a claimant need not file a notice of intention if she files the claim itself within the ninety-day period, it is undisputed that Russell did not file a claim within ninety days, and she was therefore required to file a notice of intention.

> Notice of intent is hereby given to file a claim in accordance with 33 V.I.C. § 3410 against Government of the Virgin Islands, the Superior Court of the Virgin Islands and Superior Court Marshal Carl Richardson on behalf of Jamila Russell, individually and as next of kin to [L.T.], a minor, for personal injuries and civil rights violations. On July 11, 2013, [L.T.], while in his home was shot by a Superior Court Marshal who exercised unnecessary use of force, and caused serious personal injury to [L.T.], a minor. The minor, [L.T.] had to be airlifted to a medical facility in San Juan, Puerto Rico for further treatment. As a result of the incident, [L.T.] is not [sic] a quadriplegic who will require lifelong medical care and treatment as he is unable to breathe on his own. The damages in this case exceed the statutory cap herein.

JA 30. In the bottom-left corner of the notice was a notary's stamp and signature.

Despite that accurate preview of the forthcoming complaint, Appellants decry "*numerous* defects," Reply Br. 9,

29

chief among them that the notice allegedly contains "no facts alleged or notice provided as to any of th[e tort] claims," Appellants' Br. 33. Citing *Fleming v. Cruz*, 62 V.I. 702, 718–19 (2015), Appellants say these defects are "fatal" because the VITCA requires "strict[] compl[iance]." Appellants' Br. 32.

Neither assertion is accurate. To start with, Appellants misstate the relevant standard. As the District Court correctly recognized, the Virgin Islands Supreme Court has made clear that "substantial compliance with [the VITCA] is all that is required." *Brunn*, 59 V.I. at 910. The statute's purpose, after all, is "not to hamper and harass the claimant" but merely to give the Government and relevant officers "prompt notice of the damages or injuries and the surrounding circumstances in order that the matter might be investigated and . . . liability determined." *Id.* "If the notice is sufficiently definite to inform the officers . . . of the time and cause of claimant's injuries or damages, it should be upheld." *Id.* (brackets omitted). *Fleming* is not to the contrary, as that case held only that the VITCA's *filing deadlines* are construed strictly, 62 V.I. at 718, and it is beyond dispute that the notice here was timely filed.

Moreover, even if strict compliance were required, the Family's notice would pass muster as we perceive no requirement imposed by the plain text of § 3410 with which the Family did not comply. But Appellants do—eleven of them, to be precise. Yet none is even colorable. Appellants state, for example, that the notice "does not provide a time or place where the alleged incident occurred," "does not identify . . . Russell as filing a claim on behalf of . . . [L.T.]," is "not verified," and lacks a "receipt . . . confirming [its] filing" with

30

the Governor. Appellants' Br. 40–42. The Family's notice, however, plainly states that L.T. was shot "[o]n July 11, 2013" in his "home" (the "time" and "place" where the claim arose); it asserts that it is filed "on behalf of Jamila Russell, individually and as next of kin to [L.T.], a minor, for personal injuries and civil rights violations"; it is verified by a notary's stamp and signature;[14] and it is accompanied by certified mail receipts showing it was served on the Governor and Attorney General.

Other alleged deficiencies are premised on "requirements" of Appellants' own invention—such as an alleged failure to mention specific tort theories by name, although the Virgin Islands Supreme Court has held it is "not necessary" for the notice to "provide a precise legal theory upon which recovery is sought," *Brunn*, 59 V.I. at 910, or an alleged error in Russell describing herself as her son's "next

---

[14] With respect to verification, Appellants' counsel declared for the first time at oral argument that the term, as used in the VITCA, means something other than notarization. But he offered no authority for that proposition; in fact, the only case Appellants cite having anything to do with verification cuts against them, as the court there deemed the claim unverified for "lack of a notarization." *McBean v. Gov't of Virgin Islands*, 19 V.I. 383, 386 (Terr. Ct. 1983). Consistent with normal legal usage and in the absence of other authority, we consider the requirement that the notice be "verified" as satisfied by proof it was notarized. *See Verification*, Black's Law Dictionary (10th ed. 2014) ("A formal declaration made in the presence of an authorized officer, such as a notary public[.]").

of kin" because he is not deceased, although Appellant offers no authority for the proposition that the use of the term is so limited. Appellants also nitpick what are obviously typographical errors, such as recitation of Richardson's first name as "Carl" instead of "Chris" or of L.T.'s status as "not a quadriplegic" instead of "now a quadriplegic." We will not deny jurisdiction on the basis of such quibbles when the Family's notice was "sufficiently definite to inform the officers . . . of the time and cause of claimant's injuries or damages." *Brunn*, 59 V.I. at 910.[15]

---

[15] By plucking from its context *Brunn*'s statement that a "failure to make any reference, let alone any meaningful reference, to the allegedly negligent actions of the Government" renders a notice insufficient, Appellants' Br. 35 (quoting 59 V.I. at 911), Appellants ignore just how closely *Brunn* tracks the history of this case. The notice in *Brunn* alleged that a woman had been killed by a police officer and stated an intent to sue the police department for negligent selection, training, and supervision. 59 V.I. at 909. But because as to those claims—as opposed to other kinds of potential claims against the department or the individual officer—the notice alleged only that the department had "employed" the officer at the time of the shooting, the court deemed it insufficient because it contained no "reference . . . to the allegedly negligent actions of the Government." *Id.* at 911. If that sounds familiar, it should: The District Court here likewise found the Family's notice insufficient as to the claims for negligent hiring, retention, and supervision and dismissed them. *See supra* note 5. But here, unlike in *Brunn*, the Family also brought claims against the individual official, and the factual allegations it makes in support of those claims—and thus in support of the vicarious liability that

32

Appellants fare no better with their contention that the District Court erred in finding that the Family filed a timely claim. The VITCA requires that a plaintiff, after filing her notice, file a "claim" within two years after the claim accrued, V.I. Code Ann. tit. 33, § 3409(c), which must include, in addition to the information required by the notice, the "items of damage of injuries claimed to have been sustained and the total sum claimed," *id.* § 3410. So what is the alleged deficiency in the Family's claim? According to Appellants, the Family did not file one, because "a [c]omplaint is not the same thing as a 'claim' under the VITCA," Reply Br. 15, and "[p]lenty of case law says that," Oral Arg. at 38.14–.24, http://www2.ca3.uscourts.gov/oralargument/audio/17-2255_Russellv. SuperiorCourtVI.mp3.

This appears yet another misstatement to this Court. As our precedent makes clear, "where a complaint is timely filed under the [VITCA] with the proper parties having been served and contains all of the necessary substantive requirements . . . [,] the complaint suffices as a 'claim.'" *Albert v. Abramson's Enters., Inc.*, 790 F.2d 380, 383 (3d Cir. 1986), *as amended* (May 23, 1986).[16] Appellants, however, direct us to *Gonzalez v. Stevens*, No. 82-191, 1983 WL

would extend to the Virgin Island Superior Court under the VITCA, *see Bonelli*, 2015 WL 1407259, at \*5; *supra* note 5—render the notice sufficient.

[16] Appellants inaccurately cite *Albert* for the proposition that generally a notice of intent does not constitute a claim.

889445, at *2 & n.2 (D.V.I. Mar. 22, 1983), and *Mercer v. Government of Virgin Islands*, 18 V.I. 171, 174 n.1, 179–80 (Terr. Ct. 1982)—cases that not only do not bind us and pre-date *Albert*, but also cannot bear the weight Appellants place on them. *Gonzalez* distinguished a claim from a complaint only to make clear that a claim "need not" have the "particularity required of a civil complaint," 1983 WL 889445, at *2, and *Mercer* actually rested its analysis on the assumption that a complaint could be "considered to be a 'claim,'" 18 V.I. at 179.

In short, *Albert* controls, and the claim filed by the Family, like the notice of intent, complied with the VITCA.[17] We will therefore affirm the District Court's decision denying Appellants sovereign immunity in all respects but one: The complaint included a claim for gross negligence, but, as the Family conceded at oral argument, the VITCA provides that its waiver "shall not apply if the injury . . . is caused by the gross negligence of an employee of the Government." V.I. Code Ann. tit. 33, § 3408(b). Although the District Court declined to entertain this argument because it was not raised by the Superior Court until its reply brief below, the "terms of the [Virgin Islands' waiver of sovereign immunity] are jurisdictional" and therefore "may not be waived." *Richardson*, 744 F.2d at 1010. Thus, the gross negligence claim should have been dismissed.

---

[17] The Family's complaint met all the requirements of *Albert*, and Appellants do not contend otherwise.

## IV. Conclusion

For the foregoing reasons, we will affirm the order of the District Court, except as to gross negligence, and will remand for proceedings consistent with this opinion.