**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 21-1874

_____

MATTHEW URONIS, for himself and on behalf of those
similarly situated,
Appellant

v.

CABOT OIL & GAS CORPORATION, a Texas Corporation;
GASSEARCH DRILLING SERVICES CORPORATION, a
West Virginia Corporation and subsidiary of Cabot Oil & Gas
Corporation
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil No. 3-19-cv-01557)
District Judge: Honorable Malachy E. Mannion
_____

Argued: March 30, 2022

Before: RESTREPO, ROTH, and FUENTES, *Circuit Judges*.

(Filed: September 14, 2022)

Angeli Murthy [**ARGUED**]
Morgan & Morgan
8151 Peters Road
Suite 4000
Plantation, FL 33324

    *Counsel for Appellant Matthew Uronis*

Christian C. Antkowiak [**ARGUED**]
Amy L. Barrette
Charles H. Cope
Buchanan Ingersoll & Rooney
501 Grant Street
Union Trust Building
Suite 200
Pittsburgh, PA 15219

    *Counsel for Appellees Cabot Oil & Gas Corp and Gassearch Drilling Services Corp*

Katelyn Poe [**ARGUED**]
United States Department of Labor
Division of Fair Labor Standards
200 Constitution Avenue, N.W.
Washington, DC 20210

    *Counsel for Amicus Secretary United States Department of Labor*

_____

OPINION OF THE COURT
_____


**RESTREPO**, *Circuit Judge*.

Appellant Matthew Uronis asserts that his job application was denied because his prospective employer anticipated that he would soon be filing a consent to join a then-pending putative collective action under the Fair Labor Standards Act ("FLSA").[1]

The FLSA prohibits discrimination against an employee because the employee has engaged in protected activity. 29

_____

[1] The District Court stated that "case law [ ] suggests that a job applicant cannot bring an FLSA claim for retaliation against a prospective employer," but it declined to reach that issue. App. 7. We do not reach that issue today, either. Because we are remanding, we leave it to the District Court's judgment whether to consider the application of the FSLA to prospective employees. Uronis asserts that his alleged former employer, Cabot Oil & Gas Corporation, discriminated against him when he applied for a position with Gassearch Drilling Services Corporation ("GDS"), Cabot's wholly owned subsidiary, by directing GDS not to hire Uronis due to his status as an anticipated member of a putative collective action pending against Cabot for alleged FLSA violations. It is this alleged discriminatory act by Cabot, Uronis' alleged former employer, that brings Uronis' claim within the FLSA for purposes of our decision today.

U.S.C. § 215(a)(3). Protected activity includes having "testified" or being "about to testify" in any FLSA-related proceeding. *Id.*

In this case we address whether 29 U.S.C. § 215(a)(3), also known as Section 15(a)(3), applies where an employer anticipates an employee will soon file a consent to join an FLSA collective action—but no such "testimony" has yet occurred or been scheduled or subpoenaed.

The District Court concluded that being "about to testify" under Section 15(a)(3) requires being "scheduled" or subpoenaed to do so. On that basis, because Uronis did not plead that he was scheduled to testify, the District Court granted Appellees' motion to dismiss Uronis' complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). It did not explicitly interpret the meaning of "testify" under Section 15(a)(3). But, by concluding that an employee must be scheduled to do so, the District Court impliedly construed "testify" to only include giving evidence as a witness under oath or affirmation.

Applying the guidance from *Kasten v. Saint-Gobain Performance Plastics Corporation*, 563 U.S. 1 (2011) and *Brock v. Richardson*, 812 F.2d 121 (3d Cir. 1987), we hold Section 15(a)(3)'s "about to testify" language protects employees from discrimination because of an employer's anticipation that the employee will soon file a consent to join a collective action.

Accordingly, for the reasons that follow, we will reverse the District Court's decision and remand for further proceedings consistent with this opinion.

4

## I.

Uronis is an alleged former employee of Appellee Cabot Oil & Gas Corporation, an oil and natural gas production and exploration company.[2] On February 22, 2019, Uronis' former co-worker, Michael Messenger, filed a putative FLSA collective action against Cabot and another entity, Carrie's Transport & Rental, LLC, on behalf of himself and other employees similarly situated. *See Messenger v. Cabot Oil & Gas Corp.*, No. 19-cv-308 (M.D. Pa.). The *Messenger* action alleged that Cabot and Carrie's jointly employed the employees and failed to pay them overtime pay required under the FLSA.[3] Because Uronis was a similarly situated employee who had yet to file a consent to join the collective action as a party plaintiff, he was a putative member of the *Messenger* action.[4]

---

[2] Whether Uronis was previously employed by Cabot was a disputed fact before the District Court. *See* n.3, *infra*.

[3] Uronis was originally hired by Carrie's, but contends (like Messenger does in *Messenger*) that he was jointly employed by Cabot and Carrie's. Cabot and GDS dispute that Uronis was ever an employee of Cabot's, but the District Court did not reach that fact-intensive issue as it dismissed the case at the pleading stage.

[4] FLSA collective actions are brought by one or more employees under Section 16(b) of the statute on behalf of themselves and "similarly situated" employees. "Similarly situated" employees become part of the action if they file a written consent to join. *See* 29 U.S.C. 216(b).

5

In August 2019, Uronis applied for a position with Cabot's subsidiary, Appellee GDS. Cabot and GDS were aware Uronis was a putative member of, and anticipated witness in, the *Messenger* action, and that he was about to file his consent to join.

On August 23, 2019, Messenger moved to certify the *Messenger* action as an FLSA collective action. *Messenger*, No. 19-cv-308, ECF No. 39.[5] By that date, four other employees had opted in. *See id.* at ECF Nos. 20, 32, 35, 38.

On August 28, 2019, a GDS manager sent Uronis a text message stating that although Uronis was qualified for the position he applied for—and was in fact more qualified than other candidates being considered—Cabot had declined to hire him or any other putative members of the *Messenger* action "because of" that lawsuit. App. 73. Specifically, the text stated:

> Unfortunately I found out the day after I talked to you that no one who worked for Herb [Swiney, owner of Carrie's] is supposed to be on a Cabot location. Pretty much because of the lawsuit that's going on. I know you're a worker but I can't do anything to get you into gds.
> . . .

[5] The "certification" process in an FLSA collective action only results in notice to potential plaintiffs, rather than the creation of a class. *See Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 75 (2013).

6

Maybe once the lawsuit deal dies out it might be a possibility again. I wish I could get you in, believe me you'd be better than some of the guys we've been interviewing. Also turning a lot down for the same reasons.

*Id.*

The same day, Uronis signed his consent to join the *Messenger* collective action. Prior to receiving the text message, Uronis had planned to testify in the *Messenger* action. But beyond his unspecific allegation that he contacted Messenger about opting in, Uronis does not allege that he informed anyone that he planned to testify before receiving the text message.

Uronis filed his consent to join the *Messenger* action on September 6, 2019, in which he declared that he was "similarly situated" to Messenger because he had "performed similar duties for [Cabot and Carrie's] as a laborer on Cabot oil well pads and was paid in the same manner[.]" *Messenger*, No. 19-cv-308, ECF No. 48-1.

Uronis filed the underlying complaint against Cabot and GDS (collectively, "Appellees") on behalf of himself and other similarly situated employees, alleging Appellees violated Section 15(a)(3) of the FLSA when they refused to hire him and others because they were "about to testify" in the *Messenger* action. In support, Uronis pointed to the text message from GDS.

Appellees moved to dismiss under Federal Rule of Civil Procedure 12(b)(6), arguing, *inter alia*, that Uronis failed to

7

plead that he had an employment relationship with them or that he engaged in protected activity under Section 15(a)(3).

The District Court granted Appellees' motion to dismiss on the basis that Uronis was not "about to testify" under Section 15(a)(3) because he was not "scheduled" to testify in the *Messenger* action. App. 12. It reasoned that "the unambiguous meaning" of the phrase "about to testify" in Section 15(a)(3) is that it protects an employee only when he or she "*is scheduled to testify* in a then-pending FLSA proceeding." *Id.* (quoting *Ball v. Memphis B-B-Q Co.*, 34 F. Supp. 2d 342, 345 (E.D. Va. 1999), *aff'd*, 228 F.3d 360 (4th Cir. 2000). It further stated that "[h]ad Congress intended [Section 15(a)(3)] to apply to scenarios in which putative collective action members might potentially testify at some point in the proceeding, it would have said so." *Id.* at 12–13. "Instead, Section 15 uses the phrase 'about to testify,' suggesting some sense of certainty and immediacy as opposed to mere possibility." *Id.* at 13.

Applying this interpretation, the District Court concluded that Uronis had "alleged no facts whatsoever to support the allegation that he or those similarly situated to him were 'about to testify'" because he did not allege he or others "were subpoenaed to testify or that they were told they would be called upon to testify, nor ha[d] he alleged any facts that Defendants had a reason to know that [he] or any others would be testifying." *Id.* On that basis, it granted Appellees' motion to dismiss. Uronis appealed.

## II.

The District Court had jurisdiction pursuant to 28 U.S.C. § 1331. We have jurisdiction under 28 U.S.C. § 1291.

This Court reviews a district court's order granting a motion to dismiss for failure to state a claim de novo. *Wheeler v. Hampton Twp.*, 399 F.3d 238, 242 (3d Cir. 2005). At the motion to dismiss stage, "we accept all well-pleaded allegations in the Complaint as true and draw all reasonable inferences in favor of the non-moving part[y]." *M.A. ex rel. E.S. v. State-Operated Sch. Dist. of City of Newark*, 344 F.3d 335, 340 (3d Cir. 2003) (citing *Bd. of Trustees of Teamsters Local 863 Pension Fund v. Foodtown, Inc.*, 296 F.3d 164, 168 (3d Cir. 2002)). To survive a motion to dismiss, factual allegations "must be enough to raise a right to relief above the speculative level," which "requires more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

## III.

The first issue we address is whether the District Court properly concluded that, because Uronis was not scheduled or subpoenaed to testify, Section 15(a)(3) does not protect him from retaliation.

Uronis argues that the District Court's interpretation of the language "about to testify" in Section 15(a)(3) was impermissibly narrow because it precludes a retaliation claim where, as here, anticipated participation in an FLSA action is the employer's explicit reason for discrimination. He

9

emphasizes the purpose of the FLSA is to protect workers, and that courts must broadly construe remedial statutes. He also contends that the District Court's interpretation contravenes Section 15(a)(3)'s purpose by permitting—even incentivizing—employers to race to retaliate against employees before they can file a consent to opt in to a collective action or be scheduled to testify.

Appellees counter that, to obtain Section 15(a)(3) protection, an employee must take an "overt act" to assert FLSA rights and the employer must have fair notice of that overt act. They point out that Uronis did not plead in detail any overt act he took to assert FLSA rights or that they had fair notice of same. Appellees also argue that Uronis' mere status as a putative member of the *Messenger* collective action cannot be sufficient to trigger Section 15(a)(3) protection. They further contend that it would be unfair for employers to be subject to Section 15(a)(3) liability for any adverse employment decision made about an employee who just happens to be a putative member of a collective action.

A.

We begin with the statute, and its purpose. The FLSA establishes certain minimum wage, maximum hours, and other working conditions to protect workers. *See* 29 U.S.C. § 201 *et seq*. To further this purpose "Congress . . . chose to rely on information and complaints received from employees seeking to vindicate rights claimed to have been denied." *Mitchell v. Robert DeMario Jewelry, Inc.*, 361 U.S. 288, 292 (1960). Accordingly, Congress included in the FLSA an antiretaliation provision (at Section 15(a)(3)) to encourage employees to assert their rights without "fear of economic retaliation [which]

10

might often operate to induce aggrieved employees to quietly accept substandard conditions." *Brock*, 812 F.2d at 124 (quoting *Mitchell*, 361 U.S. at 292).

Section 15(a)(3) protects an employee from retaliation because of engaging in a protected activity, which includes having "testified" or being "about to testify" in any FLSA-related proceeding. 29 U.S.C. § 215(a)(3). Specifically, it provides:

> [I]t shall be unlawful for any person . . . to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding . . . .

*Id.*

As a remedial statute, the FLSA—including Section 15(a)(3)—is broadly construed, and "must not be interpreted or applied in a narrow, grudging manner." *Brock*, 812 F.2d at 124 (citation omitted); *see also Kasten*, 563 U.S. at 7 ("The [FLSA] protects employees who have 'filed any complaint,' 29 U.S.C. § 215(a)(3), and interpretation of this phrase 'depends upon reading the whole statutory text, considering the purpose and context of the statute, and consulting any precedents or authorities that inform the analysis[.]'" (quoting *Dolan v. Postal Serv.*, 546 U.S. 481, 486 (2006)). Accordingly, courts, including the United States Supreme Court and this Court, have interpreted Section 15(a)(3) to protect employees engaging in activities not spelled out in the statute.

11

B.

The breadth of protected conduct under Section 15(a)(3) is shown in the Supreme Court's decision in *Kasten*. The *Kasten* Court held that an oral (as opposed to written) complaint of an FLSA violation is protected conduct under Section 15(a)(3). *See* 563 U.S. at 7, 17. It noted that while Section 15(a)(3) refers to a complaint that has been "filed," the word "filed" has different relevant dictionary meanings in different contexts, and some "definitions [ ] permit the use of the word 'file' in conjunction with oral material." *Id.* at 7. It further noted that "legislators, administrators, and judges have all sometimes used the word 'file' in conjunction with oral statements." *Id.* at 8. Determining that "the text, taken alone, cannot provide a conclusive answer to our interpretive question[,]" *id.* at 11, the Court then considered Congressional intent. *See id.* at 11–13.

Emphasizing the broad, remedial purpose of the FLSA, the *Kasten* Court expressed concern that many employees were not likely to make written complaints as readily as oral ones. *See id.* Thus, it reasoned, to limit the scope of Section 15(a)(3) to the filing of written complaints would foul Congress' intent by "prevent[ing] Government agencies from using hotlines, interviews, and other oral methods of receiving complaints" and "discourag[ing] the use of desirable informal workplace grievance procedures to secure compliance with the [FLSA]." *Id.* at 13.

The Court also noted in *Kasten* that it had interpreted an analogous provision in the National Labor Relations Act ("NLRA") to protect conduct not explicitly listed. *See id.* at 13. "Given the need for effective enforcement of the [NLRA]",

12

the Court "has broadly interpreted the language of the NLRA's antiretaliation provision—'filed charges or given testimony,' 29 U.S.C. § 158(a)(4)—as protecting workers who *neither* filed charges *nor* were 'called *formally* to testify' but simply 'participate[d] in a [National Labor Relations] Board investigation.'" *Id.* (quoting *NLRB v. Scrivener*, 405 U.S. 117, 123 (1972)). The Court explained that "[t]he similar enforcement needs of [the FLSA] argue for an interpretation of the word 'complaint' that would provide 'broad rather than narrow protection to the employee[.]'" *Id.* (citation omitted). For those reasons, it held that an oral complaint was protected activity under Section 15(a)(3). *See Kasten*, 563 U.S. at 17.

Similarly, this Court has broadly interpreted protected conduct under Section 15(a)(3). In *Brock*, we considered whether Section 15(a)(3) applied where an employer fired an employee it believed had filed a complaint with the Department of Labor—but the employee had not actually done so. *See* 812 F.2d at 122. The employer contended that its mere belief that an employee had engaged in protected activity was not sufficient for Section 15(a)(3) protection. *See id.* at 123. It argued that, to state a prima facie retaliation claim, the employee must have "engaged in one of the specified overt acts [in Section 15(a)(3)] and that the employer was aware of the act." *Id.* Because the employee did not actually file a complaint, in the employer's view, the employee had not engaged in protected activity—and the employer could retaliate without Section 15(a)(3) liability. *See id.*

We began our analysis in *Brock* by emphasizing that the FLSA is a "humanitarian and remedial" statute, and that enforcement of its substantive provisions is dependent on "a workplace environment conducive to employee reporting." *Id.*

13

at 123–24. Therefore, the guiding principle of interpreting Section 15(a)(3) is to prevent a fear of retaliation from chilling employees' assertion of FLSA rights. *Id.* at 124. Reviewing relevant precedent, we observed that courts interpreting Section 15(a)(3) have done so in accordance with this principle—and have interpreted it to cover situations not explicitly described in the statute.[6] We emphasized that, in these cases, "the employee's activities were considered necessary to the effective assertion of employees' rights under the [FLSA], and thus entitled to protection." *Id.*

Applying that framework, this Court interpreted Section 15(a)(3) to prohibit discrimination based on an employer's perception that an employee had engaged in protected activity—regardless of whether that perception was mistaken. *See id.* at 125. Even though the statute could be narrowly read to not include retaliation based on perception, such retaliation "creates the same atmosphere of intimidation" as does

---

[6] *See Brock*, 812 F.2d at 124 (citing *Love v. RE/MAX of Am., Inc.*, 738 F.2d 383, 387 (10th Cir. 1984) (noting Section 15(a)(3) protects employees who make internal complaints to employer); *Marshall v. Parking Co. of Am.*, 670 F.2d 141, 143 (10th Cir. 1982) (per curiam) (Section 15(a)(3) protects employees who have refused to release back pay claims or return back pay awards to their employers); *Brennan v. Maxey's Yamaha, Inc.*, 513 F.2d 179, 180–83 (8th Cir. 1975) (same); *Daniel v. Winn-Dixie Atlanta, Inc.*, 611 F. Supp. 57, 58–59 (N.D. Ga. 1985) (Section 15(a)(3) protects employees who have consulted with the Department of Labor about whether certain timekeeping practices complied with the FLSA)).

14

discrimination based on situations explicitly listed in Section 15(a)(3). *Id.* at 125.[7] Such an atmosphere of intimidation is particularly repugnant to the purpose of the FLSA in the context of collective actions.

## C.

FLSA collective actions, brought by one or more employees on behalf of themselves and those "similarly situated", are central to effective enforcement of the statute. *See Halle v. West Penn Allegheny Health Sys. Inc.*, 842 F.3d

---

[7] Other courts have interpreted Section 15(a)(3) similarly. *See Lambert v. Ackerley*, 180 F.3d 997, 1003–04 (9th Cir. 1999) (citing *Brock* and other authorities to conclude that the statute's context and purpose require that Section 15(a)(3) protect internal complaints); *Saffels v. Rice*, 40 F.3d 1546, 1548–49 (8th Cir. 1994) (adopting *Brock*'s interpretation of Section 15(a)(3) as protecting perceived protected activity); *EEOC v. White & Son Enters.*, 881 F.2d 1006, 1011–12 (11th Cir. 1989) (interpreting Section 15(a)(3) broadly to protect informal complaints, though not explicitly listed in the statute, to effectuate the intended purpose of the provision); *Brock v. Casey Truck Sales, Inc.*, 839 F.2d 872, 879 (2d Cir. 1988) (citing *Brock* to hold that employees who refused to repudiate their rights under the FLSA were protected from retaliation); *see also Crowley v. Pace Suburban Bus Div. of Reg'l Transp. Auth.*, 938 F.2d 797, 798 n.3 (7th Cir. 1991) (interpreting Section 15(a)(3) to protect refusal to attend a meeting that would not be paid because the statute has been "construed broadly to include retaliation by the employer for an employee's assertion of rights protected under the FLSA").

15

215, 223 (3d Cir. 2016).  "By permitting employees to proceed collectively, the FLSA provides employees the advantages of pooling resources and lowering individual costs so that those with relatively small claims may pursue relief where individual litigation might otherwise be cost-prohibitive."  *Id.*  Additionally, the collective action mechanism "yields efficiencies for the judicial system through resolution in one proceeding of common issues arising from the same allegedly wrongful activity affecting numerous individuals."  *Id.*  "When a named plaintiff files a complaint containing FLSA collective action allegations, the mere presence of the allegations does not automatically give rise to the kind of aggregate litigation provided for in Rule 23."  *Id.* at 224.  Rather, similarly situated employees must affirmatively opt in to join the collective action.  *Id.*

Accordingly, the enforcement mechanism of the collective action depends on employees being—and feeling—protected from retaliation for joining (or being anticipated to join.)  *See Brock*, 812 F.2d at 224.  If employers can retaliate against an employee because the employer believes the employee has or will soon file a consent to join an FLSA collective action, this enforcement mechanism—and employee protection—will be gutted.

D.

Of course, Section 15(a)(3) is not a per se bar against any adverse employment action against an employee who is or might soon be a collective action member.  Rather, it bars discrimination because of protected activity.  In understanding this distinction, *Kasten* is instructive.

The *Kasten* Court, in holding that oral complaints are protected activity, also concluded that Section 15(a)(3) liability "requires fair notice." *Kasten*, 563 U.S. at 14. It reasoned the language "'filed any complaint' contemplates some degree of formality, certainly to the point where the recipient has been given fair notice that a grievance has been lodged and does, or should, reasonably understand the matter as part of its business concerns." *Id.* Accordingly, it concluded that, to qualify as protected activity, "a complaint must be sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and a call for their protection." *Id.* "But we also believe that a fair notice requirement does not necessarily mean that notice must be in writing." *Id.* It is also worth noting that the *Kasten* Court's concern about notice revolved around the issue before it: oral complaints which an employee may make based on a fleeting feeling and might not be in earnest or may lack specificity. *See id.* at 13–14.

Importantly, *Kasten* emphasized the codependency of (1) fair notice of protected activity and (2) discrimination "because of" protected activity. *See id.* at 14. Specifically, it stated: "the statute prohibits employers from discriminating against an employee '*because* such employee has filed any complaint.' And it is difficult to see how an employer who does not (or should not) know an employee has made a complaint could discriminate *because* of that complaint." *Id.* (internal citation omitted). Thus, where an employer retaliates against an employee because it believed (rightly or wrongly) that the employee engaged in protected activity, the employer necessarily had notice—and Section 15(a)(3) applies.

17

IV.

Having set forth the statutory landscape and teachings of *Kasten* and *Brock*, we turn to the issues before us. Distilled down, the threshold issues are whether (A) filing a consent to join a collective action qualifies as testimony under Section 15(a)(3); and (B) an employee is "about to testify" where an employer anticipates the employee will soon testify, such as in a pending action. *See* §§ IV(A)–(B), *supra*. Because we answer both in the affirmative, we also address (C) Appellees' overt act argument. *See* § IV(C), *supra*.

A.

While it appears that no court has directly addressed whether filing a consent to join an FLSA collective action constitutes testimony under Section 15(a)(3), district courts have interpreted the term "testify" broadly. *See Goins v. Newark Hous. Auth.*, No. 15-cv-2195, 2019 WL 1417850, at *15 (D.N.J. Mar. 29, 2019) (concluding employee testified under Section 15(a)(3) when the employee "act[ed] as a witness" during a Department of Labor investigation by submitting a sworn statement pertaining to overtime pay); *Bowen v. M. Caratan, Inc.,* 142 F. Supp. 3d 1007, 1021–23 (E.D. Cal. 2015) (employee was "about to testify" under Section 15(a)(3) when Department investigator identified the employee as someone who could potentially provide information to the Department during a Department investigation). These interpretations comport with the teachings of *Kasten* and *Brock* that Section 15(a)(3) be broadly

18

construed to prohibit discrimination that chills employees' assertion of FLSA rights.[8]

Here, the District Court did not explicitly interpret the meaning of "testify." But, by requiring that an employee be scheduled or subpoenaed to testify to be protected under Section 15(a)(3), it implied that to "testify" only includes giving evidence as a witness under oath or affirmation. That narrow interpretation is not consistent with the FLSA's purpose, or with *Kasten* and *Brock*.

The reasoning of *Kasten* and *Brock* compel the conclusion that to "testify" under Section 15(a)(3) includes the filing of an informational statement with a government entity. A consent to join a collective action is just that: it is an informational statement (that an employee is similarly situated to the named plaintiff with respect to the alleged FLSA violation) made to a government entity (the court). Accordingly, we hold that an employee testifies under Section

---

[8] These broad interpretations also comport with the ordinary meaning of the term "testify." *See Testify*, BLACK'S LAW DICTIONARY (11th ed. 2019) (to "give evidence" or "bear witness"); *Testify*, MERRIAM-WEBSTER'S ONLINE DICTIONARY, https://www.merriam-webster.com/dictionary/testify (last visited Aug. 11, 2022) ("to make a solemn declaration under oath for the purpose of establishing a fact (as in a court), to make a statement based on personal knowledge or belief: bear witness, or to serve as evidence or proof."); *see also Kasten*, 563 U.S. at 7–8 (looking at dictionary definitions in interpreting term "filed" in Section 15(a)(3)).

15(a)(3) when the employee files a consent to join an FLSA collective action.

B.

We next turn to whether an employee is "about to testify" under Section 15(a)(3) where an employer anticipates that the employee will soon testify.

In contravention of the principles laid out in *Kasten* and *Brock*, the District Court adopted the reasoning and narrow interpretation of the Eastern District of Virginia's decision in *Ball*, 34 F. Supp. 2d at 342. In *Ball*, the plaintiff brought a Section 15(a)(3) claim alleging defendant fired him after discovering that he would testify against defendant in an FLSA lawsuit that was being threatened—but had not yet been filed—by another of defendant's employees. *Id.* at 343. The *Ball* defendant moved to dismiss, arguing that plaintiff failed to plead he was "'about to testify' in an FLSA proceeding, as he fail[ed] even to allege that such a proceeding ever existed." *Id.*

In interpreting "about to testify", both the *Ball* court and the District Court here cited a dictionary definition of the term "about," which they paraphrased as "relatively certain and near in time," to conclude that "the unambiguous meaning" of "about to testify" is that it protects an employee only when the employee "*is scheduled to testify* in a then-pending FLSA proceeding." App. 12 (citing *Ball*, 34 F. Supp. 2d at 345). The *Ball* court concluded that the plaintiff failed to state a claim because he was not scheduled or subpoenaed to testify, and for the additional reason that no FLSA action was then pending. *See* 34 F. Supp. 2d at 345–46. Although the *Messenger* action

20

was already pending, the District Court adopted *Ball*'s scheduling requirement.

Applying that requirement, the District Court noted Uronis had "alleged no facts whatsoever to support the allegation that he or those similarly situated to him were 'about to testify'" because he did not allege he or others "were subpoenaed to testify or that they were told they would be called upon to testify, nor has he alleged any facts that Defendants had a reason to know that Uronis or any others would be testifying." App. 13. It emphasized that Uronis had not even filed a consent to join when the alleged discrimination occurred. On that basis, it dismissed his complaint.

Other courts, with reasoning more faithful to *Kasten* and *Brock*, have broadly construed "about to testify" to include testimony that is impending or anticipated, but has not been scheduled or subpoenaed.[9] These decisions broadly construing

---

[9] *See Hinsdale v. City of Liberal*, 19 F. App'x 749, 756 (10th Cir. 2001) (concluding employee who had decided to testify in FLSA lawsuit was "about to testify"); *Bowen*, 142 F. Supp. 3d at 1022 (holding employee was about to testify under Section 15(a)(3) when Department of Labor investigator identified the employee as someone who could potentially provide information to the Department during a Department investigation); *French v. Oxygen Plus Corp.*, No. 3:13-cv-00577, 2015 WL 1467175, at *2 (M.D. Tenn. Mar. 30, 2015) (holding employee was "about to testify" where employee's emails were attached to FLSA complaint, and thus employee's name would eventually be disclosed as a person with knowledge relevant to suit); *Perez v. Fatima/Zahra, Inc.*, No. 14-cv-2337, 2014 WL 2154092, at *2 (N.D. Cal. May 22,

21

"about to" comport with dictionary definitions of the term "about," which, in its temporal sense, includes activity that is "reasonably close to, almost, on the verge of," or "intending to do something or close to doing something very soon."[10]

Broad interpretations of "about to" also comport with the mandate to broadly interpret Section 15(a)(3) to prevent a fear of retaliation from chilling employees' assertion of FLSA rights. *See Brock*, 812 F.2d at 124. Interpreting Section 15(a)(3) so narrowly as to require testimony to be scheduled or subpoenaed to qualify for protection does not. Retaliation because of an employee's anticipated decision to file a consent to join a collective action "creates the same atmosphere of intimidation" as does discrimination based on an employee being scheduled or subpoenaed to testify. *See id.* at 125. Accordingly, the enforcement needs of the FLSA argue for an interpretation of "about to testify" that would provide broad rather than narrow protection to the employee. *See Kasten*, 563

2014) (concluding employer likely violated Section 15(a)(3) by threatening employees in anticipation of their cooperation with a pending Department investigation).

[10] *See About*, MERRIAM-WEBSTER'S ONLINE DICTIONARY, https://www.merriamwebster.com/dictionary/about (last visited Aug. 11, 2022); *About To Do Something*, OXFORD FREE ENGLISH DICTIONARY, https://www.lexico.com/en/definition/about (last visited Aug. 11, 2022); *see also Ball*, 34 F. Supp. 2d at 345 ("'near in time . . . almost, or nearly'") (quoting ABOUT, BLACK'S LAW DICTIONARY 7 (5th ed.1979)); *see also Kasten*, 563 U.S. at 7–8 (looking at dictionary definitions in interpreting term "filed" in Section 15(a)(3)).

U.S. at 13.  For these reasons, we hold that an employee who intends to soon file a consent to join a then-pending FLSA collective action is "about to testify" under Section 15(a)(3).

Here, Uronis pleaded that Appellees were aware he was "a putative collective member" of and "a witness" in the *Messenger* action before he filed his consent to join, and that, prior to applying for a job at GDS, he planned to testify in *Messenger*.  App. 72.  Uronis further alleged that GDS (via text message) explicitly informed him that it was rejecting his job application "because of" the *Messenger* action.  *Id.* at 73. Based on these allegations—particularly those regarding the text message—Appellees declined to hire Uronis and his former co-workers because of the then-pending *Messenger* action.  It is plausible that they did so because they anticipated Uronis and his former co-workers would soon file consents to join the putative collective action, or otherwise provide evidence relating to it.  Accordingly, Uronis adequately pleaded he was "about to testify" under Section 15(a)(3).

C.

We now turn to Appellees' contention that the District Court's decision should be affirmed because Uronis did not allege that he took an overt act that fairly put them on notice that he was about to testify with regard to the *Messenger* action. This argument misses the mark—in part by conflating notice with causation.

As detailed above, in holding that oral complaints are protected activity, the *Kasten* Court concluded that Section 15(a)(3) liability "requires fair notice." *Kasten*, 563 U.S. at 14. But in doing so it questioned whether discrimination that violates Section 15(a)(3) could even exist without fair notice. *See id.* ("[T]he statute prohibits employers from discriminating against an employee '*because* such employee has filed any complaint.' And it is difficult to see how an employer who does not (or should not) know an employee has made a complaint could discriminate *because of* that complaint.") (internal citation omitted). Moreover, interpreting Section 15(a)(3) to protect activity that an employer anticipates—even mistakenly, *see Brock*, 812 F.2d at 124–25, necessarily considers the employer's awareness or perception as part of the causation element of a Section 15(a)(3) claim—as opposed to the protected activity element.

Uronis adequately pleaded that Appellees had fair notice that he engaged in protected activity. Taking Uronis' allegations as true, Appellees explicitly declined to hire him "because of" the *Messenger* action. *See* App. 73. Based on his allegations, it is plausible that Appellees discriminated against Uronis based on their anticipation that he would file a consent to join the collective action, or otherwise give relevant

24

testimony. Retaliating against an employee based on such a perception violates Section 15(a)(3). *See Brock*, 812 F.2d at 124–25 (finding that employer violated Section 15(a)(3) by retaliating based on mistaken perception that employee had filed an FLSA complaint). Moreover, unlike the solely oral complaint deemed sufficient in *Kasten*, *see* 563 U.S. at 14–17, Appellees had knowledge arising from the then-pending *Messenger* lawsuit.

This does not, as Appellees fear, mean that an employer can never make an adverse employment decision regarding an employee that is a putative member of a collective action. Rather, it means they cannot do so for the mere reason that the employee is a putative member who may join the action or otherwise exercise rights under the FLSA.

V.

For the reasons above, we will reverse the order of the District Court dismissing Uronis' complaint, and remand for proceedings consistent with this opinion.